UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DELANEY,  )<br>      Petitioner, )<br>)<br>v. )<br>)<br>JAMES SABA, )<br>      Respondent, )<br>) | Civil Action No. 05-11336-MLW |

### RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

The respondent hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by John Delaney (the "petitioner"). In his habeas petition, the petitioner contends that the writ should be granted because the state court violated the Due Process prohibition against fundamental unfairness by: (1) allowing evidence of the petitioner's refusal to comply with a body search warrant as evidence of his consciousness of guilt; and (2) allowing the prosecutor to use instances of the petitioner's post-Miranda silence to impeach him. This Court must deny habeas relief where, the state court did not commit constitutional error by allowing consciousness of guilt evidence at trial. Moreover, even if the admission was constitutionally erroneous, the error did not have a "substantial and injurious effect on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The Massachusetts Supreme Judicial Court (the "SJC"), after considering the whole record and in accord with *Chapman v. California*, 386 U.S.18 (1967), determined that the error was "harmless beyond a reasonable doubt," thus, the SJC's adjudication of the petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. Further, the

petitioner's post-Miranda silence claim is in procedural default and must be denied where the petitioner cannot demonstrate cause and prejudice or actual innocence to excuse the default.

## STATEMENT OF THE CASE

On January 27, 1999, after a four-day jury trial in the Suffolk County Superior Court, Elizabeth B. Donovan, J., presiding, the petitioner was found guilty of: assaulting John Henderson ("Henderson") with a knife with the intent to murder him, in violation of G.L. c. 265, § 18(b); and assaulting and battering Henderson with a knife, in violation of G.L. c. 265, § 15(a). *See* S.A., Ex. A at 7,[1] Docket Entries, *Commonwealth v. Delaney*, SUCR1996-11860.  On January 28, 1999, the petitioner was sentenced to a term of four to six years in prison on count-one and three years of probation, to be served after his incarceration, for count-two. *Id*. The petitioner filed a timely notice of appeal. *Id*.

On October 5, 2000, the petitioner filed a motion for new trial in the Suffolk County Superior Court. *Id*. at 8. On April 18, 2001, Justice Laurence of the Massachusetts Appeals Court stayed the petitioner's sentence and he was released on his own recognizance. *Id*. at 8, 9. The petitioner's motion for new trial was denied on June 26, 2001 (Donovan, J.). *Id*. at 9.  A timely appeal of the denial was filed on July 16, 2001.  The Appeals Court consolidated the petitioner's direct appeal with his appeal from the denial of his motion for new trial. *Id.* The petitioner's convictions were affirmed by the Appeals Court on July 22, 2003 in an unpublished opinion pursuant to its Rule 1:28. *See* S.A., Ex. E.

The SJC granted further appellate review on October 3, 2003. *See* S.A., Ex. G,

---

[1] The respondent herein references the Supplemental Answer as "S.A., Ex. __." References to the Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus will be "Pet. Mem. __.

*Commonwealth v. Delaney*, 440 Mass. 1103 (2003) . On September 2, 2004, the SJC affirmed petitioner's conviction. *See* S.A., Ex. J, *Commonwealth v. Delaney*, 442 Mass. 604 (2004). The petition for rehearing was denied on September 20, 2004. *See* S.A., Ex. L.

On June 24, 2005, the petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent hereby files this opposition to said petition for writ of habeas corpus.

## STATEMENT OF FACTS

The recitation of the underlying facts by the Supreme Judicial Court is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *Dolinger v. Hall*, 302 F.3d 5, 7 n. 5 (1st Cir. 2002). The petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the United States Court of Appeals for the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001). The state court's findings of fact can be overcome only if the petitioner demonstrates that they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *Id.* at 597-598, *quoting* 28 U.S.C. § 2254(d)(2). In *Delaney*, the SJC summarized the evidence supporting the petitioner's conviction as follows:

> On the afternoon of October 18, 1996, the [petitioner], working for a courier service, drove to a downtown Boston office building to make a delivery of two large packages. He was accompanied by a fellow employee, who waited outside in the vehicle while the [petitioner] proceeded into the building to take the packages to a customer on the thirty-seventh floor. On his way in, the [petitioner] accidentally collided with the victim, John Henderson, resulting in a heated exchange of words between the two. The [petitioner] headed toward the bank of elevators, with an angry Henderson in pursuit. When the

[petitioner] got into an elevator, Henderson attempted to block the doors; the [petitioner] kicked or shoved Henderson out; Henderson charged back into the elevator; and a fight ensued as the doors closed and the elevator lifted off.

What transpired during the course of that altercation in the elevator was hotly contested. Henderson's version was that after he landed a few blows, the [petitioner] pulled out a knife and stabbed him multiple times. Henderson attempted to grab the blade and thereby stop the attack, and he bit the [petitioner]'s shoulder in an unsuccessful attempt to make the [petitioner] drop the knife. When the elevator stopped on the thirty-seventh floor, Henderson escaped and rushed to the nearest office to seek help. The [petitioner] did not follow him. Although one of Henderson's abdominal wounds was life threatening, he did survive.

The [petitioner]'s version of the altercation in the elevator was that Henderson had him pinned and was repeatedly banging his (the [petitioner]'s) head against the wall. Due to a prior injury and reconstructive surgery to his face and skull, the defendant was especially fearful of reinjury and, as he began "seeing stars," was in fear of his life.[2] He pulled out his small utility knife and stabbed Henderson several times, but Henderson's attack persisted throughout. He recalled Henderson grabbing at the blade and biting him in the shoulder. Henderson did not relent until the elevator doors opened.

After Henderson departed, the [petitioner] did not proceed with his delivery of packages, but instead returned to the ground floor and, without reporting the altercation or stabbing to anyone, walked to the vehicle where his coworker was waiting. As the [petitioner] approached, "winded and dizzy," he took off his jacket and threw it in the back of the vehicle.[3] The coworker asked the [petitioner] what happened. The [petitioner] replied that he had been unable to deliver the packages because the customer was not in her office to receive them. He said nothing about any altercation or stabbing, made no complaint about any injury to his head, and sought no medical attention. He continued with his delivery route for the rest of the day, and made additional deliveries substituting for other couriers.

That night, the defendant camped out on an island in Boston Harbor, and left the knife on the island. When the [petitioner] returned to work the following Monday, a supervisor asked him

---

[2]In footnote one, the SJC stated; "The defendant's doctor testified, confirming that the defendant had been treated for skull fractures six years earlier, requiring the insertion of a steel plate. The doctor warned patients with this type of injury 'that they must take great care to avoid having recurrent trauma to that area because that area having had a fracture is at greater risk for being refractured."

[3] In footnote two, the SJC stated: "From the fact that Henderson had been covered in blood, the jury could infer that the jacket was bloodstained and that the [petitioner] was attempting to conceal it from his coworker."

whether he knew anything about a stabbing that had occurred on his delivery route.[4] The [petitioner] claimed that he knew nothing about the incident. He continued to work on Monday and Tuesday, and then called in sick for the next three workdays.

Meanwhile, the police were looking for the [petitioner] in his usual haunts, but were initially unable to find him. On October 30 (twelve days after the incident), they obtained a warrant from the Suffolk Superior Court to search the [petitioner] for any bite marks. Later that same day, three officers went to the [petitioner]'s workplace, where they found him and presented him with the warrant. One of the officers told him that the warrant authorized them to take him to the police station to be examined by a physician. The [petitioner] began to accompany the officers out of the building, but then asked them whether he was "under arrest," to which one of the officers replied, "no." The [petitioner] then started to walk away from the officers. The officers stopped him, handcuffed him, and proceeded to take him to the station. There he was examined, and a bite mark on his left shoulder was photographed.

See S.A., Ex. J, *Commonwealth v. Delaney*, 442 Mass. 604, 605-07 (2004).

## ARGUMENT

I.  **The Habeas Petition Must Be Denied Where it Was Not Constitutional Error To Admit Evidence Of Petitioners Refusal To Comply With The Body Search Warrant and Even if it Had Been Constitutional Error the Massachusetts Supreme Judicial Court's "Harmless Beyond a Reasonable Doubt" Determination Was Not Contrary To, Or An Unreasonable Application Of, Clearly Established Federal Law, As Determined By The Supreme Court.**

   A.   **The Standard of Review.**

"Under the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], a state prisoner can prevail only if the state court's decision 'was contrary to, or involved an unreasonable application, of clearly established Federal Law, as determined by the Supreme Court of the United States.'" *Tyler v. Cain*, 533 U.S. 656, 660 (2001) (quoting 28 U.S.C. § 2254(d)(1)). A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing

---

[4]In footnote three, the SJC stated: "The supervisor had seen a news report describing the incident, and recognized the address as one of the [petitioner]'s delivery locations."

law set forth in Supreme Court cases" or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407-09, 413. The fact that the state court merely reached an incorrect result is not sufficient - the result must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002) (*citing Taylor*, 529 U.S. at 411); *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002 (en banc) ("'[s]ome increment of incorrectness beyond error is required' ....The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court," *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2nd Cir. 2000)). Where, for instance, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. *McCambridge*, 303 F.3d at 37 (*citing O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)).

In some habeas cases, resolution of petitioner's claims will turn entirely on the state court's determination of the underlying factual issues. *DiBenedetto v. Hall,* 272 F.3d 1, 7 n.1 (1st Cir. 2001), *cert. denied*, 535 U.S. 1024 (2002). This is because, under the AEDPA, state court factual determinations are "presumed to be correct," unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the

contrary. 28 U.S.C. § 2254(e)(1); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion, *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *see also Thompson v. Keohane*, 516 U.S. 99, 111-13 (1995) (for purposes of *Miranda*, scene-setting factual findings involving the trial court's assessment of credibility, are presumed to be correct), and extends to factual determinations made by both state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).

"AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'" *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) (*citing* 28 U.S.C. § 2254(d)). Despite petitioner's claim to the contrary: AEDPA's strict standard of review applies to his claims. The SJC, in its review of petitioner's Due Process claims cites to *Commonwealth v. Vermette*, which applies the *Chapman* "harmless beyond a reasonable doubt" standard. 43 Mass.App.Ct. 789, 797-799 (1997), *citing Delaware v. Van Arsdall*, 457 U.S. 673, 684 (1986). "A state court...does not need to cite Supreme Court precedents so long as 'neither the reasoning nor the result of the state court decision contradicts [those precedents]." *Petrillo v. O'Neill*, 428 F.3d 41, 45 (1st Cir. 2005) (*citing Early v. Packer*, 537 U.S. 3, 8 (2002)). It is clear from the *Delaney* decision that the SJC understood and applied the correct standard of review. *See* S.A., Ex. J, 442 Mass. at 613-14.

### B. The Admission of Refusal Evidence to Show Consciousness of Guilt Was Not Constitutional Error on the Part of the Trial Court.

Federal habeas corpus relief is not appropriate unless the alleged state evidentiary error reaches constitutional magnitude. "Federal habeas corpus relief does not lie for errors of state

law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*citing Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  On federal habeas review the scope of review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; *see also* 28 U.S.C. § 2241.  As the court states in *Estelle*, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Id.*  For a state evidentiary error to reach the level of a constitutional violation, "[the] state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." *Petrillo*, 428 F.3d at 44 (*citing Subilosky v. Callahan*, 689 F.2d 7, 10 (1st Cir. 1982)).  The petitioner's claim, that the admission of evidence regarding his refusal to submit to a body search warrant violated his due process rights, fails to reach the level of constitutional error.

      The Supreme Court held in *South Dakota v. Neville*, that it was not fundamentally unfair, to use evidence of the defendant's refusal to take a blood alcohol test as evidence of his guilt.  459 U.S. 553, 566 (1983).  In *Neville*, the defendant was arrested for driving while intoxicated.  *Id*. at 555.  After the defendant was placed under arrest and read his *Miranda* rights, the officers asked him if he would submit to a blood-alcohol test and explained the consequences should he refuse.  *Id*.  The defendant refused to take the test and the refusal was subsequently used to show consciousness of guilt at trial.  *Id*. at 556-58.  The Court opined: "we do not think it fundamentally unfair...to use the refusal to take the test as evidence of guilt, even though the [defendant] was not specifically warned that his refusal could be used against him at trial.  *Id.* at 565.  The court relied on the reasoning that the right to refuse a blood-alcohol test was "a matter of grace bestowed by the ... legislature," not a right of "constitutional dimension." *Id.*  Further, the warnings by the police officer "contained no such misleading implicit assurances as to the

relative consequences of his choice." *Id.*

In the present case, the petitioner's right to refuse to submit to the body search warrant was not of "constitutional dimension." In fact, the petitioner had no right to refuse a valid, court issued warrant at all. Under Massachusetts law, "[A] suspect may lawfully refuse to submit to such testing unless and until the police make the requisite showing and obtain a warrant or court order." *See* S.A., Ex. J, *Delaney*, 442 Mass. at 610 (*citing Commonwealth v. Maxwell*, 441 Mass. 773, 777-78 (2004)). Once the police have a valid warrant, "a suspect has no lawful option but to comply with the warrant or order itself - the suspect has no further right to refuse compliance, and no right is being burdened by the insistence that the suspect submit to the warrant." *Id.* at 611 (*referencing Commonwealth v. Pratt*, 407 Mass. 647, 649, 652 n.7 (1990)).

The petitioner asserts that the police officer's factual response of "No" to his inquiry as to whether he was under arrest was an "affirmative misstatement." *See* Pet. Mem. at 15. Petitioner claims that the alleged misstatement was "at least enough to create an implicit assurance to [petitioner] that his failure to accompany the police would not be used against him." *Id.* The petitioner's claim is untenable. The SJC made factual findings that "[t]he officer's negative answer was technically correct (as the defendant was not "under arrest" on any charge)." *See* S.A., Ex. J, *Delaney*, 442 Mass. at 612. Further the SJC determined that an officer "presented [petitioner] with the warrant...and told him that the warrant authorized them to take him to the police station to be examined by a physician." *Id.* at 607. The statement by the officer that petitioner was not under arrest was not an "affirmative misstatement." It was the correct response to the petitioners question. In addition, there was no "implicit assurance" that petitioner had **ANY** option but to accompany the officers. The petitioner was "presented" with the warrant

9

and the requirement that petitioner must accompany the officers was clearly explained to him. *Id.* The petitioner's mistake as to the law is no excuse for his refusal to comply with the warrant.

The petitioner relies on *Johnson v. United States,* 318 U.S. 189 (1943), and its progeny in support of his claim.[5] Those cases, though similar in some instances, are distinguishable from the present case. The cases cited by petitioner stand for the proposition that "breaching the implied assurances of the *Miranda* warnings is an affront to the fundamental fairness that Due Process Clause requires." *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986).

> That this 'fundamental unfairness' derives from the implicit assurances of the *Miranda* warnings is supported by [the Supreme Court's] holdings that due process is not violated by the impeachment of pre-Miranda warnings silence, either before arrest, or after arrest, or of post-Miranda warnings statements, nor is it violated by the use of refusal to take a state test that does not involve *Miranda*-like warnings."

*Id.*, (Internal citations omitted). Thus, it is clear that the petitioners claim does not rise to the level of constitutional error and should there for be denied.

### C. Even If Constitutional Error is Assumed, the Petitioner's Claim Fails Where the Error Did Not Have a Substantial and Injurious Effect On the Verdict.

Assuming *arguendo* that the admission of refusal evidence at trial was one of constitutional magnitude, the claim nevertheless must be denied where the "trial error" did not have a substantial and injurious effect on the verdict. The Supreme Court has held that the appropriate harmless error standard to be applied in the habeas context is that adopted by the Court in *Brecht v. Abramson*, 507 U.S. 619, 637 (1993). *Medina v. Matesanz*, 298 F.3d 98, 100, 101 (1st Cir. 2002) (*Brecht's* "less exacting" harmless error standard governs habeas review).

---

[5]*United States v. Cardiff*, 344 U.S. 174 (1952); *Raley v. Ohio*, 360 U.S. 423 (1959); *Cox v. Louisiana*, 379 U.S. 559 (1965); *Doyle v. Ohio*, 426 U.S. 610 (1976); and *Wainwright v. Greenfield*, 474 U.S. 284 (1986).

The *Brecht* standard "applies regardless of whether the state court itself made a *Chapman* harmless error analysis." *See Fortini v. Murphy*, 257 F.3d 39, 48 (1st Cir. 2001) (*citing Tyson v. Trigg*, 50 F.3d 436 ,466 (7th Cir. 1995), *cert. denied*, 516 U.S. 1041 (1996)). "A federal habeas court ... is bound to uphold a state court judgment, notwithstanding a preserved constitutional error, as long as the error did not have 'a substantial, injurious effect on the jury's verdict." *Id.*, *quoting Sanna*, 265 F.3d at 14. "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."'" *Brecht*, 507 U.S. at 637. As the Supreme Court stated in *Brecht*, this "standard is better tailored to the nature and purpose of collateral review than the *Chapman* standard, and application of a less onerous harmless-error standard on habeas promotes the considerations underlying our habeas jurisprudence." 507 U.S. at 623. Only where the federal court is in "grave doubt" as to whether the error had a substantial and injurious effect on the jury's verdict may the court grant relief. *O'Neal v. McAninch*, 513 U.S. 432, 435-36 (1995).

In this case, any error based on the admission of the refusal evidence at trial is without a doubt harmless error where that evidence was cumulative of other, more potent, consciousness of guilt evidence; where the prosecutor's closing argument made no reference to the refusal evidence; and where the trial judge gave a pointed instruction regarding the use of consciousness of guilt evidence.

The evidence of petitioner's refusal to comply with the body search warrant had a limited impact, if any, where there was "[f]ar more explicit consciousness of guilt evidence...presented to the jury" in this case. *See* S.A., Ex. J, *Delaney*, 442 Mass. at 613. There was evidence at trial

that the petitioner lied to his coworker when he returned to the delivery vehicle after the altercation, stating that "he had been unable to deliver the packages because the customer was not in her office to receive them." *Id.* at 606. Petitioner did not tell his coworker about the altercation or the stabbing. *Id.* Also, the petitioner took off his jacket and put it in the back of the vehicle in an attempt to conceal the bloodstained jacket from his coworker. Id. at 607 n.2. Evidence that on the night of the altercation the petitioner "camped out on an island in Boston Harbor," and disposed of the knife used in the stabbing on that island is further evidence of the petitioner's consciousness of guilt. *Id.* Moreover, when asked by his supervisor if he knew anything about the stabbing, he replied that he did not. *Id.* Again the petitioner denied any knowledge of the incident. *Id.* After being questioned by his supervisor the petitioner called in sick for three days and avoided his "usual haunts." *Id.* at 607, 607 n.2. All the above-mentioned evidence, entered at trial, and recognized by the SJC as consciousness of guilt, was far more compelling than petitioner's refusal to accompany the police. The evidence of petitioner's refusal to comply with the warrant was nothing more than cumulative evidence of consciousness of guilt which had very little impact on the jury verdict.

      Further diluting the effect that the refusal evidence had on the verdict is the fact that "the prosecutor's closing argument made no reference to the refusal to accompany the officers...." *Id.* at 613. Finally, the trial judge's pointed jury instruction on consciousness of guilt was "expressly directed to 'evidence that the [petitioner] may have intentionally made certain false statements about this particular incident," pointing out that 'there may be numerous reasons why an innocent person may lie" and that 'evidence of lying is never enough to convict a person of a crime.'" *Id.* The SJC found that "it is particularly unlikely that the refusal evidence had any role in [the

jury's] assessment of the [petitioner's] consciousness of guilt. *Id.*

Where this Court is bound by the SJC's determination of the facts as to all of the circumstances, any error in allowing evidence of petitioner's refusal to comply with the warrant "did not have a substantial, injurious effect on the verdict." *See Medina*, 298 F.3d at 101. A review of the evidence leaves no doubt that the respondent has met his burden under *Brecht*, and that the writ should be denied. Indeed, "granting habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the verdict...is at odds with the historic meaning of habeas corpus - to afford relief to those whom society has 'grievously wronged.'" *Brecht*, 507 U.S. at 637 (*quoting Chapman*, 386 U.S. at 24).

**II.    The Petitioner Is Not Entitled To Habeas Corpus Relief Where His Claim That The Prosecutor's Use of His Post-*Miranda* Silence To Impeach Him Violated The Due Process Clause's Guarantee Of Fundamental Fairness Is Procedurally Defaulted And He Has Failed To Establish Cause And Prejudice Or That A Miscarriage Of Justice Will Result If The Claim Is Not Reviewed.**

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial. Rather, the remedy is limited to the consideration of federal constitutional claims." *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1999). *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution). *See also Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials"). Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground. *See Coleman v. Thompson*, 501 U.S. 722 (1991). In *Coleman*, the Supreme Court held

that where:

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750. *See Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004); *Tart v. Massachusetts*, 949 F.2d 490, 496-97 (1st Cir. 1991); *Palmariello v. Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 493 (1st Cir.), *cert. denied sub nom.*, *Palmariello v. Butler*, 493 U.S. 865 (1989). A petitioner's procedural default constitutes an adequate and independent state ground so long as the state consistently applies the rule and has not waived it. *Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004); *Gunter v. Maloney*, 291 F.3d 74, 79 (1st Cir. 2002); *Burks v. DuBois*, 55 F.3d at 716; *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir. 1987), *cert denied*, 485 U.S. 990 (1988). The jurisdictional nature of the independent and adequate state ground requires that it be addressed by this Court at the outset. *Lambrix v. Singletary*, 520 U.S. 518, 523-24 (1997).

The petitioner claims that his right to due process was violated by the state trial court's allowance of the prosecutor to impeach him with his post-*Miranda* silence. Specifically, the petitioner's failure to tell police the location of the knife and his failure to provide the photographs showing his injuries. *See* Pet. Mem. at 22. There were no timely objections made at trial to any of these claims. *See* S.A., Ex. J, *Delaney*, 442 Mass. at 616. Because this claim was raised for the first time on appeal, without objection in the trial court, the SJC reviewed it to determine whether the admission of the above-mentioned evidence created a substantial likelihood of a miscarriage of justice in accordance with the standard identified in *Commonwealth v. Alphas*, 430 Mass. 8, 13 (1999). *See* S.A., Ex. J, *Delaney*, 442 Mass. at 616.

In *Alphas*, citing to *Commonwealth v. Freeman*, 352 Mass. 556, 564 (1967), the SJC held that an "error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence' the guilty verdict."

Massachusetts has "a long standing rule that issues not raised at trial...are treated as waived..." *Commonwealth v. Curtis*, 417 Mass. 691, 626 (1994). The rationale behind the waiver doctrine is that a defendant who fails to bring his claim to the attention of the reviewing court at the earliest possible time, waives his right to the court's resolution of that claim. *See Lykus v. Commonwealth*, 432 Mass. 160, 163 (2000) (*quoting Commonwealth v. Pisa*, 384 Mass. 362, 365-66 (1981)). Thus, in Massachusetts, appellate review of waived claims is limited to the discretionary standard of whether the claimed transgression created a substantial risk of miscarriage of justice. *See Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004); *Burks v. Dubois*, 55 F.3d at 716; *Pulieo v. Vose*, 830 F.2d at 1199. Here, the SJC clearly reviewed this procedurally barred claim under that standard. *See* S.A., Ex. J, *Delaney*, 442 Mass. at 616. The SJC determined that it was defense counsel who elicited the petitioner's testimony regarding his post-arrest silence and that the prosecutor's questions were justified to rebut the "erroneous impression that they had spoken before trial." *Id.* Although the SJC recognized error in allowing questions regarding petitioner's failure to produce the two items of physical evidence, the court was satisfied that the questions did not materially influence the verdict. *Id.* The limited review undertaken pursuant to the Massachusetts "miscarriage of justice" standard does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d at 716 n.2.

To the contrary, such review constitutes the "classic example of an independent and adequate state ground" supporting the application of the procedural default rule. *Simpson v.*

*Matesanz*, 175 F.3d 200, 207 (1st Cir. 1999). Thus, this habeas court may consider the claim only if the petitioner establishes "cause and prejudice" with respect to the procedural default or demonstrates to this Court his actual innocence. *See Dretke v. Haley*, 541 U.S. 386, 391-94, (2004). The petitioner has made no attempt to show "cause," "prejudice," or a miscarriage of justice to excuse the default, nor can he. Here, the fact that petitioner does not even attempt to demonstrate cause for his default effectively ends the inquiry for this Court.

Although this Court need not consider the prejudice question, in fact, the petitioner could not demonstrate prejudice even if this Court chose to address this claim. Prejudice requires the petitioner to demonstrate "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" *Ortiz v. Dubois*, 19 f.3d 708, 714 (1st Cir. 1994) (*quoting United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner can make no such presentation here. As the SJC points out, "the one improper question about the knife (asking the [petitioner] if he had ever shown the knife to police) was sandwiched amongst permissible questions about the [petitioner's] failure to bring the knife to trial." *See* S.A., Ex. J, *Delaney*, 442 Mass. at 616. It is unreasonable to think that one innocuous question, buried within an number of admissible questions, had but a slight effect, if any, on the petitioners verdict. The other improper question, asking whether petitioner provided the police with photos he took of the bite mark, similarly had little effect on the verdict. In fact, both the victim and the petitioner testified that the victim bit the petitioner, and the defendant introduced one of the photos in question himself. *Id.* The SJC reasoned that the admission of the above-mentioned evidence, regarding the bite photos, made the point uncontested and showed that the photos actually helped the petitioner. *Id.* In light of

16

the other evidence against the petitioner and the limited negative impact the questions could have had, it is clear that the errors did not place the petitioner at an actual and substantial disadvantage, or infect his entire trial with error of constitutional dimensions. *See Ortiz v. DuBois*, 19 F.3d at 714.

Absent cause and prejudice sufficient to excuse his procedural default, the only other avenue available to the petitioner - that a refusal to hear his default claim would result in a "fundamental miscarriage of justice" - is foreclosed. *Simpson*, 175 F.3d at 210. This exception to the procedural default rule is "seldom to be used, and explicitly tied to a showing of actual innocence.'" *Killela v. Hall*, 84 F.Supp.2d 204, 210 (D. Mass. 2000) (*quoting Burks*, 55 F.3d at 717). No such showing has been or could be made here, thus petitioner's default cannot be excused.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

 /s/ Jonathan Ofilos
Jonathan Ofilos
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2634
BBO # 658091

Dated: January 13, 2006

## Certificate of Service

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 13, 2006.

                                            /s/ Jonathan Ofilos
                                            Jonathan Ofilos