**United States District Court**
**District of Massachusetts**

**Civil Action No. 05-11336**

John Delaney,
Petitioner

v.

James Saba,
Superintendent, MCI-Concord
Respondent

**Delaney's Reply Memorandum**
**in Support of Petition for Writ of Habeas Corpus**

Petition John Delaney ("Delaney") respectfully submits this reply to the

Respondent's ("Commonwealth") opposition to his petition for a writ of habeas corpus. The

Commonwealth unfairly whipsawed Delaney when its agents (1) assured Delaney that there

would be no penalty for his silence and (2) told him that he was not under arrest, but then

used his walking away from the police and his post-*Miranda* silence to prove his guilt.

STATEMENT OF THE CASE

The statement of the case is contained in the defendant's memorandum in support

of his petition at pages 2-3. The Commonwealth's memorandum in opposition incorrectly

states that Delaney was convicted of assault with intent to murder.[1] He was not. He was

convicted of the lesser-included offense of assault with intent to kill.[2] The difference is

significant because it indicates that the jury accepted Delaney's assertion of self-defense

but disbelieved his testimony that he used reasonable force in self-defense.

**I.      The admission of evidence that Delaney walked away from the police when they**
**        told him he was not under arrest violated fundamental fairness.**

---

[1] (Resp. Mem. at 2).
[2] *Commonwealth v. Delaney*, 442 Mass. 604, 605 (2004).

A.    Standard of review

    1.    *De novo* review

    Delaney explained in his principal memorandum that this Court reviews this claim *de novo* because the Massachusetts Supreme Judicial Court did not address his federal constitutional claim.[3] The Commonwealth's rejoinder is that the SJC's opinion "cites to *Commonwealth v. Vermette*, which applies the *Chapman* [*v. California*, 386 U.S. 18 (1967)] 'harmless beyond a reasonable doubt' standard."[4] This, the Commonwealth says, shows that the SJC "understood and applied the correct [i.e. federal] standard of review".[5] The portion of the SJC opinion that the Commonwealth relies on reads as follows:

> Given this pointed instruction focusing the jury's attention on the more explicit consciousness of guilt evidence in the case, it is particularly unlikely that the refusal evidence had any role in their assessment of the defendant's consciousness of guilt. *See Commonwealth v. Vermette*, 43 Mass. App. Ct. 789, 797-799, 686 N.E.2d 1071 (1997)  (where defendant acknowledged his presence at crime scene, and evidence of refusal to let police search vehicle or photograph footwear was not referenced in closing argument or instructions, error in admitting refusal evidence was harmless beyond reasonable doubt).[6]

Contrary to what the Commonwealth says, this passage shows the SJC analyzing a state constitutional claim.

    *Commonwealth v. Vermette* is a Massachusetts case that explicitly deals *only* with refusal evidence under Article 12 of the Massachusetts constitution.[7] The "harmless beyond a reasonable doubt" review applied in *Vermette* was mandated by the state constitutional

---

[3] (Pet. Mem. at 7).
[4] (Resp. Mem. at 7).
[5] (Resp. Mem. at 7).
[6] *Delaney*, 442 Mass. at 613-14.
[7] *Commonwealth v. Vermette*, 43 Mass. App. Ct. 789, 790 n.1 (1997).

holding in *Commonwealth v. Hinckley*.[8] Further, *Hinckley* and *Vermette* are part of a line of Massachusetts state constitutional refusal evidence cases that the SJC explicitly distinguished from the federal refusal cases.[9] Therefore, the passage from *Vermette* signifies nothing other than a Massachusetts court reviewing for error and prejudice under the Massachusetts constitution. There was no review of Delaney's separate federal claim of fundamental unfairness.

        2.       Presumption of correctness

        Part of Delaney's first claim is premised on the fact that the police misled Delaney when they told him that he was not under arrest when he was, in fact, under arrest.[10] The Commonwealth says that the claim fails as a factual matter. It asserts that the SJC's statement that "[t]he officer's negative answer was technically correct (as the defendant was not 'under arrest' on any charge)" constitutes a factual finding that is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). The Commonwealth is wrong. The issue of whether a suspect is under arrest is a *mixed* question of law and fact that does not trigger the "clear and convincing" clause of 2254 (e)(1).[11] That section applies to findings of "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators,"[12] not mixed questions of law and fact.

B.       Substance

---

[8] *Commonwealth v. Hinckley*, 422 Mass. 261, 264, 267 (1996).
[9] *Opinion of the Justices*, 412 Mass. 1201, 1211 (1992).
[10] (Pet. Mem. at 8-9).
[11] *Williams v. Taylor*, 529 U.S. 362, 398 (2000) (majority portion of opinion of Stevens, J.); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (U.S. 2004); *cf. Thompson v. Keohane*, 516 U.S. 99, 113 (1995); *United States v. Fornia-Castillo*, 408 F.3d 52, 63 (1st Cir. 2005).
[12] *Sanna v. Dipaolo*, 265 F.3d 1, 7 (1st Cir. 2001) (*quoting Bryson v. Ward*, 187 F.3d 1193, 1211 (10th Cir. 1999)).

The substance of the Commonwealth's opposition begins with an extended exercise in misdirection.[13] It postulates that Delaney's claim is that the admission of refusal evidence violated Delaney's constitutional rights.[14] That is not Delaney's claim. Delaney's claim is that it was fundamentally unfair for the prosecutor to use Delaney's walking away from the police as evidence consciousness of guilt where the police had just told him that he was not under arrest.[15]

The Commonwealth claims that there was no fundamental unfairness because there was no "implicit assurance" that there would be no penalty for Delaney's failure to cooperate with the police.[16]

But the Commonwealth fails to mention important matters of record relevant to that question. The evidence showed (1) that the police had previously "Mirandized" Delaney – the archetypal implicit assurance of non-penalty - at the exact same location (his workplace), (2) that Delaney responded by invoking his *Miranda* rights,[17] and (3) that the police responded by leaving him in peace.[18] And then - the major operative fact - Detective Modica told Delaney that he was not under arrest. In combination, those facts led Delaney to reasonably believe that he was free to leave. As the First Circuit said in *Roberts v. Maine*, allowing the state to turn around and make a case for guilt out of this kind of induced confusion violates basic notions of "fair play and decency."[19]

To similar effect is *Scull v. Virginia.*[20] There, Scull asked why he was being questioned by a legislative committee.[21] The committee's response was simply vague,

---

[13] (Resp. Mem. at 7-10).
[14] *Id.*
[15] (Pet. Mem. at 8-17).
[16] (Resp. Mem. 9).
[17] *Miranda v. Arizona*, 384 U.S. 436 (1966); (Tr. 4:65).
[18] (Tr. 4:58, 65).
[19] *Roberts v. Maine*, 48 F.3d 1287, 1295 (1st Cir. 1995).
[20] *Scull v. Virginia*, 359 U.S. 344 (1959).

rather than affirmatively wrong or misleading.[22] As a result, Scull refused to answer and was convicted of contempt.[23] The Supreme Court reversed, holding that Scull's refusal could not be penalized because the committee's response was so vague that it deprived Scull of "an opportunity of understanding the basis for the questions or any justification on the part of the Committee for seeking the information he refused to give."[24]

Again, the point is not that Delaney had a right to walk away. He did not. The point is that evidence of Delaney's walking away should not have been admitted because it was the product of misleading and confusion created by the government.

The Commonwealth responds that the seven Supreme Court cases relied on by Delaney[25] are "similar in some circumstances" but distinguishable.[26] But it never actually distinguishes the cases. Instead it baldly asserts that "[t]he cases cited by petitioner stand for the proposition that 'breaching the implied assurances of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires.'"[27] As a matter of simple chronology, this is an incorrect characterization of the cases. Five of the seven cases relied on by Delaney pre-date *Miranda* and have nothing to do with Miranda warnings.[28] So obviously, the cases do not stand for the proposition posited by the Commonwealth. They stand for a broader proposition: the government may not lead a suspect to believe that he had a particular right and then use evidence of him invoking that right as evidence of guilt.[29]

---

[21] *Scull*, 359 U.S. at 347.
[22] *Scull*, 359 U.S. at 348.
[23] *Scull*, 359 U.S. at 344.
[24] *Scull*, 359 U.S. at 353; *accord United States v. Laub*, 385 U.S. 475, 487 (1967).
[25] *Johnson v. United States*, 318 U.S. 189 (1943); *United States v. Cardiff*, 344 U.S. 174 (1952); *Raley v. Ohio*, 360 U.S. 423 (1959); *Scull v. Virginia*, 359 U.S. 344 (1959); *Cox v. Louisiana*, 379 U.S. 559 (1965); *Doyle v. Ohio*, 426 U.S. 610 (1976); *Wainwright v. Greenfield*, 474 U.S. 284 (1986).
[26] (Resp. Mem at 10).
[27] *Id.* (*quoting Greenfield*, 474 U.S. at 291).
[28] (Pet. Mem. at 9-13) (*Johnson*, *Cardiff*, *Raley*, *Scull*, *Cox*).
[29] *Id.*

The Commonwealth then quotes a footnote from *Wainright v. Greenfield* that says that fundamental fairness is not "violated by the use of a refusal to take a state test that does not involve *Miranda*-like warnings."[30] But the Commonwealth's quotation omits the authority cited by the Supreme Court for that sentence: *South Dakota v. Neville*.[31] As explained by Delaney in his principal memorandum (and as explained by the First Circuit in *Roberts*), *Neville* actually provides for relief where the police mislead the defendant.[32]

The Commonwealth says that there was no misleading here because "the requirement that petitioner must accompany the officers was clearly explained to him."[33] The SJC's opinion does not say this. The SJC's opinion says that

> three officers went to the defendant's workplace, where they found him and presented him with the warrant. One of the officers told him that the warrant authorized them to take him to the police station to be examined by a physician.[34]

The SJC opinion is indeed clear that Delaney had no right to refuse.[35] But the SJC most certainly did not find that the police told Delaney that he had to submit when he asked if he was under arrest. Indeed, the testimony was to the contrary. Detective Modica agreed that he "didn't tell him [Delaney] whether or not you're under arrest doesn't make any difference [and that] [y]ou've got to come with us because we have the warrant."[36] And, as explained in Delaney's principal memorandum, a plain inspection of the warrant presented to Delaney reveals that the warrant was a command to the police, not Delaney.[37] Therefore, a reasonable person could have been confused as to whether he had

---

[30] (Resp. Mem. at 10) (*quoting Greenfield*, 474 U.S. at 291 n.6).
[31] *South Dakota v. Neville*, 459 U.S. 553 (1983).
[32] (Pet. Mem. at 14-15).
[33] (Resp. Mem. at 10).
[34] *Delaney*, 442 Mass. at 607 (emphasis added).
[35] *Delaney*, 442 Mass. at 611-12.
[36] (Tr. 3:235).
[37] (Pet. Mem. at 15-16).

the right to walk away from the officers. Indeed, the SJC itself said "the defendant's misinterpretation was itself understandable."[38]

C.    Prejudice

In asserting that there was no prejudice from any constitutional violation, the Commonwealth fails to address Delaney's argument that the normal *Kotteakos*[39] habeas prejudice standard does not apply to violations of fundamental fairness.[40] Delaney stands on his memorandum as to that point.

Employing a standard prejudice analysis, the Commonwealth pegs its argument to three assertions: (1) the evidence at issue was cumulative of other consciousness of guilt evidence, (2) the prosecutor's closing made no reference to the refusal evidence, and the "trial judge gave a pointed instruction on consciousness of guilt."[41] Delaney's principal memorandum, at pages 19-20, explains that the suspect evidence was not cumulative. Second, it is true that the prosecutor did not mention the refusal evidence in closing. He did not need to. He used it in every other stage of the case: in his opening, in his case-in-chief, and in his cross-examination.[42]

The "pointed" instruction relied on by the Commonwealth worsened rather than ameliorated the prejudice. The trial judge gave a consciousness of guilt instruction[43] that dealt only on the giving of false statements,[44] presumably Delaney's statements in the workplace. The instruction did *not* explain to the jury how to evaluate evidence of

---

[38] *Delaney*, 442 Mass. at 612.
[39] *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).
[40] (Pet. Mem. at 17); *contrast* (Resp. Mem. at 10-11).
[41] (Resp. Mem at 11-12).
[42] (Tr. 2:42); (Tr. 3:200-219); (Tr. 4:157-158, 163).
[43] *See Commonwealth v. Toney*, 385 Mass. 575, 585 n.6 (1982).
[44] (Tr. 4: 265-66).

flight,[45] including Delaney's walking away from Detective Modica. Normally, a

Massachusetts consciousness of guilt instruction cautions the jury that

> there are numerous reasons why an innocent person might flee, flight or
> similar conduct does not necessarily reflect feelings of guilt. [And] that,
> even where a person's flight does demonstrate feelings of guilt, it does not
> necessarily mean that the person is in fact guilty, because feelings of guilt
> are sometimes present in innocent people.[46]

And perhaps more importantly, the normal instruction would further enjoin the jury "that

they are not to convict a defendant on the basis of evidence of flight or concealment

alone."[47] The instruction given here said none of these things.[48] As worded, it left the jury

free to convict, i.e., to reject Delaney's claim of self-defense, solely on Delaney's refusal

to submit to the warrant.

## II.    The prosecutor unfairly impeached Delaney with his post-*Miranda* silence.

Delaney raises an additional claim that the prosecutor behaved fundamentally

unfairly by impeaching him with his post-arrest, post-*Miranda* silence.[49] In particular, the

prosecutor impeached Delaney with his post-*Miranda* failure to turn over to the knife to

the police, with his failure to provide photographs of himself, and with his failure to

speak to the prosecutor.[50]

The Commonwealth responds that the claims are procedurally defaulted.[51] But the

Commonwealth never responds to Delaney's argument that the SJC did not "clearly and

expressly" rely on an independent and adequate state ground of procedural default.[52] A

---

[45] (Tr. 4:180).
[46] *Toney*, 385 Mass. at 585 n.6.
[47] *Toney*, 385 Mass. at 585.
[48] (Tr. 4: 265-66).
[49] (Pet. Mem. at 22-26).
[50] *Id.*
[51] (Resp. Mem. at 13-15).
[52] (Pet. Mem. at 26-28) (*citing Torres v. DuBois*, 174 F.3d 43, 46 (1st Cir. 1999), *Harris v. Reed*, 489 U.S. 255, 261, 266 (1989), and *Michigan v. Long*, 463 U.S. 1032, 1041 (1983)).

9

claim is procedurally defaulted if Massachusetts state courts review the claim under the

Massachusetts unpreserved error standard: whether the error posed a "substantial

likelihood of a miscarriage of justice."[53] Here, the SJC simply did not invoke that

standard. It merely observed that the errors "did not materially influence the verdicts."[54]

     Compare this case to Judge Young's decision in *McCambridge v. Hall.*[55] In that

case, Judge Young found no adequate and independent state procedural ground barring

federal review.[56] Rather than invoking the normal trigger for procedural default –

"substantial risk of a miscarriage of justice" - the Massachusetts Appeals Court had held

that there was simply "no risk" and rejected the claim on the merits.[57] For that reason, the

Chief Judge found no clearly and expressly stated adequate and independent state

ground.[58] As opposed to the "no risk" standard applied in *McCambridge*, the SJC applied

a test in Delaney's case that did not even sew the seeds of expressly invoking the

"substantial risk of a miscarriage of justice" standard.[59]

     Judge Young made an additional observation regarding procedural default in

*McCambridge* that applies to this case. He noted that

> The Appeals Court did indicate a procedural default with respect to
> another of McCambridge's claims, thus compelling the conclusion that had
> the court grounded its decision on the basis of procedural default, it would
> have so indicated.[60]

Here, the SJC clearly indicated procedural default with respect to a jury instruction claim

---

[53] *Allen v. Massachusetts*, 926 F.2d 74, 78 (1st Cir. 1991).
[54] *Delaney*, 442 Mass. at 616 (citation omitted).
[55] *McCambridge v. Hall*, 94 F. Supp. 2d 146, 152 (D. Mass. 2000), *reversed on other grounds*, 303 F.3d 24 (1st Cir. 2002).
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Delaney*, 442 Mass. at 616.
[60] *Id.* (footnote omitted).

10

immediately preceding this claim.[61] That compels the similar conclusion here that the SJC did not clearly and expressly ground its decision on procedural default. The claim is properly before this Court.

Finally, the Commonwealth asserts that the multiple errors were non-prejudicial.[62] On the contrary, the error was egregious and struck at the heart of Delaney's defense: his credibility in asserting that he acted reasonably in self-defense. The prosecutor's comments suggested to the jury that the defendant should be disbelieved because he failed to explain himself to the police or the prosecutor. There was absolutely no purpose for the Commonwealth's introduction of Delaney's refusal in its case-in-chief other than painting Delaney as a ne'er-do-well for the jury. Nothing could be more unfairly prejudicial.

## <u>Conclusion</u>

John Delaney's trial was fundamentally unfair. The Court should grant his petition for a writ of habeas corpus.

Respectfully submitted,

/s/ David J. Nathanson
David J. Nathanson
BBO #633772
Committee For Public Counsel Services
44 Bromfield Street
Boston, MA 02108
617-988-8309

dated:  March 9, 2006

---

[61] *Delaney*, 552 Mass. at 615.
[62] (Resp. Mem. at 16-17).

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1(D), Delaney respectfully requests that this Honorable Court order oral argument on the above-entitled matter because oral argument would assist the Court.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the Assistant Attorney General Jonathan Ofilos, the attorney of record for the respondent via electronic filing on March 9, 2006.

/s/ David J. Nathanson
David J. Nathanson