```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

JOHN DELANEY,                      )
     Petitioner,                   )
                                   )
          v.                       )   C.A. No. 05-11336-MLW
                                   )
                                   )
JAMES SABA                         )
     Respondent.                   )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                            January 24, 2007

I.  INTRODUCTION

Petitioner John Delaney ("Delaney") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Delaney brings two claims. He first alleges that he was denied due process because the prosecution unfairly used evidence that he refused to comply with a warrant for a body search. The Massachusetts Supreme Judicial Court (the "SJC") held that the admission of that evidence, if error, was harmless under federal law. That decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

Delaney next alleges that the prosecution denied due process by commenting on Delaney's post-arrest and post-<u>Miranda</u> silence. This claim was procedurally defaulted under state law and is not subject to review by this court.

For these reasons, and as further discussed in this Memorandum, the petition is being denied.

II.  BACKGROUND

Delaney was convicted of assault with intent to kill and assault and battery with a dangerous weapon in Suffolk Superior Court. Commonwealth v. Delaney, 442 Mass. 604, 605 (Mass. 2004). The Commonwealth of Massachusetts Appeals Court and the SJC affirmed Delaney's conviction. Delaney, 442 Mass. at 605.

As this court is reviewing a collateral attack, it must presume that the state court's factual determinations are correct unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000). The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion. Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).

The SJC explained the facts underlying the conviction as follows:

> On the afternoon of October 18, 1996, the defendant, working for a courier service, drove to a downtown Boston office building to make a delivery of two large packages. He was accompanied by a fellow employee, who waited outside in the vehicle while the defendant proceeded into the building to take the packages to a customer on the thirty-seventh floor. On his way in, the defendant accidentally collided with the victim, John Henderson, resulting in a heated exchange of words between the two. The defendant headed toward the bank of elevators, with an angry Henderson in pursuit. When the defendant got into an elevator, Henderson attempted to block the doors; the defendant kicked or shoved Henderson out; Henderson charged back into the elevator; and a fight ensued as the doors closed and the elevator lifted off.
>
> What transpired during the course of that altercation in

the elevator was hotly contested. Henderson's version was that, after he landed a few blows, the defendant pulled out a knife and stabbed him multiple times. Henderson was stabbed in his upper abdomen, lower abdomen, right arm, scalp, and left hand. Henderson attempted to grab the blade and thereby stop the attack, and he bit the defendant's shoulder in an unsuccessful attempt to make the defendant drop the knife. When the elevator stopped on the thirty-seventh floor, Henderson escaped and rushed to the nearest office to seek help. The defendant did not follow him. Although one of Henderson's abdominal wounds was life threatening, he did survive.

The defendant's version of the altercation in the elevator was that Henderson had him pinned and was repeatedly banging his (the defendant's) head against the wall. Due to a prior injury and reconstructive surgery to his face and skull, the defendant was especially fearful of reinjury and, as he began "seeing stars," was in fear for his life.[1]  He pulled out his small utility knife and stabbed Henderson several times, but Henderson's attack persisted throughout. He recalled Henderson grabbing at the blade and biting him in the shoulder. Henderson did not relent until the elevator doors opened.

After Henderson departed, the defendant did not proceed with his delivery of packages, but instead returned to the ground floor and, without reporting the altercation or stabbing to anyone, returned to the vehicle where his coworker was waiting. As the defendant approached, "winded and dizzy," he took off his jacket and threw it in the back of the vehicle.[2]  The coworker asked the defendant what happened. The defendant replied that he had been unable to deliver the packages because the customer was not in her office to receive them. He said nothing about any altercation or stabbing, made no complaint about any injury to his head, and sought no

---

[1] The defendant's doctor testified, confirming that the defendant had been treated for skull fractures six years earlier, requiring the insertion of a steel plate. The doctor warned patients with this type of injury "that they must take great care to avoid having recurrent trauma to that area because that area having had a fracture is at greater risk for being refractured."

[2] From the fact that Henderson had been covered in blood, the jury could infer that the jacket was bloodstained and that the defendant was attempting to conceal it from his coworker.

medical attention. He continued with his delivery route for the rest of the day, and made additional deliveries substituting for other couriers.

That night, the defendant camped out on an island in Boston Harbor, and left the knife on the island. When the defendant returned to work the following Monday, a supervisor asked him whether he knew anything about a stabbing that had occurred on his delivery route.[3] The defendant claimed that he knew nothing about the incident. He continued to work on Monday and Tuesday, and then called in sick for the next three workdays.

Meanwhile, the police were looking for the defendant in his usual haunts, but were initially unable to find him. On October 30 (twelve days after the incident), they obtained a warrant from the Suffolk Superior Court to search the defendant for any bite marks. Later that same day, three officers went to the defendant's workplace, where they found him and presented him with the warrant. One of the officers told him that the warrant authorized them to take him to the police station to be examined by a physician. The defendant began to accompany the officers out of the building, but then asked them whether he was "under arrest," to which one of the officers replied, "no." The defendant then started to walk away from the officers. The officers stopped him, handcuffed him, and proceeded to take him to the station. There he was examined, and a bite mark on his left shoulder was photographed.

Commonwealth v. Delaney, 442 Mass. 604, 607 (Mass. 2004).

These facts were all brought out at Delaney's trial before the Superior Court. There, the prosecutor also commented on Delaney's refusal to submit to the body search; Delaney, 442 Mass. at 607-613; questioned Delaney about his failure to present to the police two pieces of evidence (the knife used in the altercation and a photograph of the bite mark on Delaney's shoulder); id. at 616; and

---

[3] The supervisor had seen a news report describing the incident, and recognized the address as one of the defendant's delivery locations.

twice asked: "You wouldn't have told me where the knife was if I asked you; would you?"; Trial Tr. vol. IV, 145, Jan. 26, 1999.

III. DISCUSSION

Delaney requests that a writ of habeas corpus be granted because the state court denied due process by allowing the prosecutor 1) to introduce evidence of Delaney's refusal to comply with a body search warrant where that refusal was caused by the misleading statements of the police; and 2) to comment for purposes of impeachment on Delaney's post-arrest, post-<u>Miranda</u> silence. Each of these claims is without merit.

A. <u>Admission of Evidence of Refusal to Submit to a Body Search</u>

In addition to contesting the merits of Delaney's first claim, the parties disagree as to what standard of review this court must apply to that claim. As explained below, the court must review deferentially the SJC's judgment on Delaney's claim. Under such review, Delaney's claim fails.

1. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), establishes the deferential standard of review applied by a habeas court for the review of a state court judgment that is rendered "on the merits." <u>See</u> 28 U.S.C.

§2254(d).[4]  However, this standard does not apply to all state court judgments: a judgment on a federal claim is not rendered "on the merits" unless it is decided on federal law grounds. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (citing 28 U.S.C. §2254(d)). Accordingly, any federal claims decided on purely state law grounds are subject to de novo review. Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003).

Delaney argues that de novo review of his first due process claim is proper because the SJC never decided the federal issue on the merits. Accordingly, says Delaney, there is no state court interpretation of Delaney's federal rights to which this court might defer.

The Commonwealth retorts that the SJC applied the federal harmless error standard to dispose of Delaney's first due process claim and that the SJC's citations can be traced to controlling federal precedent. This, says the Commonwealth, is sufficient to trigger AEDPA's deferential standard of review.

---

[4] Section 2254 states:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Commonwealth is correct. In Petrillo v. O'Neill, 428 F.3d 41 (1st Cir. 2005), the Court of Appeals for the First Circuit held that a state court's indirect citation to federal case law was sufficient to demonstrate awareness and application of the appropriate federal standard. 428 F.3d at 45. Petrillo controls here because the SJC cited Commonwealth v. Vermette, 43 Mass.App.Ct. 789, 797-799 (Mass. 1997), for the federal harmless error standard.[5] It was this federal harmless error standard that the SJC used to dispose of Delaney's first due process claim.

    2. Merits

As the SJC disposed of Delaney's first due process claim under federal law, this court may issue a writ of habeas corpus on this issue only to the extent that the judgment was "contrary to clearly established law as established by the Supreme Court," or where the judgment provided an "unreasonable application of Supreme Court precedent." 28 U.S.C. §2254(d)(1); Tyler v. Cain, 533 U.S. 656, 660 (2001); O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998). The SJC's judgment passes under both prongs.

A state court decision is "contrary to" clearly established

---

[5] Vermette states, "whether an error is harmless depends on many factors, Delaware v. Van Arsdall, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 106 S.Ct. 1431 (1986), including whether the 'erroneously admitted evidence was 'merely cumulative' of evidence properly before the jury.'" 43 Mass.App.Ct. at 797-98 (quoting Commonwealth v. Sinnot, 399 Mass. 863, 872 n.8 (Mass 1987) (applying harmless error review to a potential Sixth Amendment violation)).

law in only two circumstances: 1) where "the state court applies a rule that contradicts the governing law set forth [in United States Supreme Court] cases;" or 2) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Here, the SJC relied on the correct legal standard. A court on direct appeal follows Chapman v. California, 386 U.S. 18, 24 (1967), and, when "confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt." Sanna v. Dipaolo, 265 F.3d 1, 14 (1st Cir. 2001). In Delaney, the SJC cited the Chapman harmless error standard, although in a roundabout way. See Delaney 442 Mass. at 613-14 (citing Vermette, 43 Mass. App. Ct. at 798, citing Van Arsdall, 475 U.S. at 684, following Chapman 386 U.S. 18 (1967)). Accordingly, the SJC did not apply a rule that contradicts the governing federal law. Moreover, the court is not aware of, and Delaney does not suggest any, Supreme Court cases that faced identical facts and came to a conclusion different from Delaney.

As the SJC applied the correct standard and did not provide analysis directly contradicting an identical Supreme Court case, its judgment is not "contrary to" established law.

Similarly, the SJC analysis did not provide an "unreasonable application" of Supreme Court precedent. An application is unreasonable only "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-09, 413. The fact that the state court merely may have reached an incorrect result is not sufficient - the result must be unreasonable. L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002) (citing Williams, 529 U.S. at 411); McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002 (en banc) ("[s]ome increment of incorrectness beyond error is required.... The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court[.]" (internal quotation omitted)). Where, for example, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. McCambridge, 303 F.3d at 37 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)).

The significant record support for the SJC's harmless error conclusion renders its opinion reasonable. The SJC explained that any error regarding the evidence at issue was harmless because such evidence was 1) cumulative of other consciousness of guilt evidence that was "overwhelming;" 2) not mentioned in the prosecutor's

closing argument; and 3) mitigated by the trial judge's instruction regarding the use of consciousness of guilt evidence. See <u>Delaney</u> 442 Mass. at 613-14.

In support of its cumulative evidence point, the court referenced Delaney's lie to his coworker about the reason for his failure to deliver the package, his failure to tell his coworker about the altercation, his attempt to conceal his potentially blood stained jacket, his retreat to an island in Boston Harbor and disposal of the knife on that island, his absence from his usual haunts following the incident, and his lie to his supervisor regarding his knowledge of the incident. See <u>Delaney</u>, 442 Mass. at 613.

Delaney cites no cases suggesting that this analysis falls outside of the realm of reason. He does, however, contest all three conclusions in the SJC's analysis. The evidence was not cumulative, claims Delaney, because the statements to his employer could be construed as an attempt to keep his job rather than an attempt to assert legal innocence. Delaney describes the remaining evidence as merely "evasiveness" that "[i]s not powerfully indicative of guilt."

Next, Delaney argues that the prosecutor's failure to mention the evidence at closing is immaterial because the prosecutor used the evidence in every other stage of the case.

Finally, Delaney argues the jury instructions only exacerbated

the prejudice. While the instructions discussed false statements, they did not give the standard admonitions regarding flight, including the one enjoining the jury "that they are not to convict a defendant on the basis of evidence of flight or concealment alone." Thus, concludes Delaney, the jury instructions "left the jury free to convict...solely on Delaney's refusal to submit to the warrant."

Though Delaney's arguments suggest that the SJC could have come to a different conclusion, they do not demonstrate that the SJC's actual conclusion was unreasonable. The Supreme Court has explained that cumulative evidence is a factor in evaluating whether error was harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (discussing harmless error in the context of the Confrontation Clause). It is reasonable to find that the significant additional consciousness of guilt evidence rendered harmless the disputed evidence concerning Delaney's resistance to the body search.

### B. The Admission of the Prosecution's Comments

Delaney next argues that under Doyle v. Ohio, 426 U.S. 610 (1976), the prosecution commented impermissibly on Delaney's exercise of his Miranda rights. This Doyle claim is procedurally defaulted and therefore not subject to review.

Generally, habeas review is precluded when a state court reaches its decision on an independent and adequate state law

ground.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991).  A petitioner's procedural default constitutes such a ground so long as the state consistently applies the procedural default rule and has not waived it in the case before it.  See Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995).

The procedural default found by the SJC satisfies this test. The SJC held that Delaney failed to make a timely objection to the prosecutor's comments.  See Delaney, 442 Mass. at 616.  It then gave some review under the miscarriage of justice standard as enunciated in Commonwealth v. Alphas, 430 Mass. 8, 12 (Mass. 1999) ("Because the defendant did not object to the jury instructions, we must determine whether the error created a substantial risk of a miscarriage of justice.").  See id.  It is well established that the SJC's limited review of a procedurally defaulted claim under its miscarriage of justice standard does not constitute a waiver of a petitioner's procedural default.  See, e.g., Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004).

Delaney's contrary argument relies unsuccessfully on the "plain statement" rule of Harris v. Reed, 489 U.S. 255 (1989).  In Harris, the Supreme Court held that the plain statement rule governing the Court's direct review of state court opinions applies equally in the habeas context.  489 U.S. at 263.  "After, Harris, federal courts on habeas corpus review of state prisoner claims...will presume that there is no independent and adequate

12

state ground for state court decisions when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman, 510 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). In Harris, the Court held that because the state court discussed the merits of the federal claim and failed to reference directly the state procedural rules, it had not plainly relied upon a state procedural bar to deny the petitioner's claim. See id.

Harris does not apply here as the SJC plainly stated that there were "[n]o timely objections" and then cites Alphas, a state case, for its miscarriage of justice standard. See Delaney, 442 Mass. at 616.

As Delaney has procedurally defaulted his Doyle claim, this court may consider it only if Delaney establishes "cause and prejudice" with respect to the procedural default or demonstrates to this court that refusal to hear his defaulted claim would result in a fundamental miscarriage of justice. See Dretke v. Haley, 541 U.S. 386, 391-94 (2004). Delaney has not attempted to make either showing.

As Delaney's first claim is without merit and his second is procedurally defaulted, his petition for habeas corpus is hereby DENIED.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE