UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN DELANEY,          )
     Petitioner     )
                      )
        v.         )   C.A. No. 05-11336-MLW
                      )
JAMES SABA,           )
     Respondent     )

MEMORANDUM AND ORDER

WOLF, D.J.                           May 22, 2007

I.  INTRODUCTION

John Delaney filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. In his petition, Delaney raises two claims: first, that he was denied due process because the prosecution unfairly used evidence that he refused to comply with a warrant for a body search; second, that he was denied due process because the prosecution commented on his post-arrest and post-Miranda silence.

The court denied the petition. See Jan. 24, 2007 Mem. and Order Denying Petition at 1. It explained that the Supreme Judicial Court's ("SJC") denial of the first claim was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent and that the second was procedurally defaulted under state law and, therefore, not subject to review by the court. Id.

Delaney now asks that the court grant a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253. Under §2253, the court may not issue a COA unless the petitioner has made a

1

"substantial showing of the denial of a constitutional right." 28
U.S.C. §2253(c)(2). To succeed, the applicant "must demonstrate
that reasonable jurists would find the district court's assessment
of the constitutional claim debatable or wrong." Miller-El v.
Cockrell, 537 U.S. 332, 338 (2003) (internal quotations omitted).
A claim "can be debatable even though every jurist of reason might
agree, after the COA has been granted and the case has received
full consideration, that petitioner will not prevail." Id.
However, the "issuance of a COA must not be pro forma or a matter
of course" because by enacting the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2241 et seq,
"Congress confirmed the necessity and the requirement of
differential treatment for those appeals deserving of attention
from those that plainly do not." Id. at 337.

Under this standard, Delaney has demonstrated that he was
arguably denied his due process right not to be penalized for the
invocation of his post-arrest, post-Miranda right to remain silent.
Accordingly, Delaney's motion for a COA on this claim is being
allowed. For the reasons discussed in this Memorandum, the motion
is being denied as to his other claims.

II. DISCUSSION

    A. A COA Will Not Issue For Admission of Evidence of Refusal
to Submit to a Body Search

1. <u>The Standard of Review Issue</u>

Delaney contends that it is debatable that this court applied the wrong standard of review to his first constitutional claim. He argues that review should have been <u>de novo</u> because the SJC might have considered his claim a matter of state, rather than federal, law. In support, Delaney points to the text of the SJC's opinion that states that his fundamental unfairness claim was made "[i]n addition to his constitutional argument[.]" <u>E.g.</u>, <u>Commonwealth v. Delaney</u>, 442 Mass. 604, 612 (2004). This language, he argues, suggests that the SJC considered his claim as a matter of state law. The argument was not made in either Delaney's memorandum in support of his petition or his reply to the Commonwealth's opposition. Accordingly, it is waived for purposes of appeal. <u>See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992) ("absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal").

Delaney next contends that the SJC arguably applied the state, rather than federal, harmless error standard. His claim turns on the SJC's citation to <u>Commonwealth v. Flebotte</u>, 417 Mass. 348, 353 (1994). Again, Delaney raises an argument for appeal that was not previously presented to this court. In his original arguments, Delaney relied entirely on the SJC's citation to <u>Commonwealth v.</u>

<u>Vermette</u>, 43 Mass.App.Ct. 789 (App.Ct. 1997), a case that Delaney believed mistakenly to employ the state harmless-error rule. Reply at 2-3. As Delaney did not previously raise the citation to <u>Flebotte</u>, he may not do so for the first time on appeal. <u>See Teamsters</u>, 953 F.2d at 21.

    2. <u>The Merits Issue</u>

Delaney next argues that the merits of his first constitutional claim are debatable because this court stated, "Though Delaney's arguments suggest that the SJC could have come to a different conclusion, they do not demonstrate that the SJC's actual conclusion was unreasonable." Jan. 24, 2007 Mem. and Order Denying Petition at 11. Delaney reasons that if the SJC could have come to a different conclusion, then "[f]or that reason alone, the Court should issue a COA as to this issue." Mem. in Support of COA at 4-5. Delaney misconstrues the applicable legal standard.

For a COA to issue, the petitioner must show that a reasonable jurist could disagree with this court's, not the SJC's, assessment of the petitioner's constitutional claim. <u>See Miller-El</u>, 537 U.S. at 338. This court determined that under AEDPA, the SJC did not apply an unreasonable interpretation of Supreme Court precedent. Jan. 24, 2007 Mem. and Order Denying Petition at 9-11.[1] Delaney has

---

    [1] In reaching this conclusion, the court analyzed whether the SJC's harmless-error analysis under <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), was an unreasonable application of Supreme Court precedent as required by 28 U.S.C. §2254(d)(1) and <u>Williams v. Taylor</u>, 529 U.S. 362, 407-08 (2000). <u>See Mitchell v.</u>

not sought to show that this court's conclusion is debatable. Accordingly, a COA will not issue on the question of the body search.

B. A COA Will Issue For The Admission of the Prosecution's Comments

The facts relevant to the use of the prosecution's comment are as follows. As explained more fully in the court's January 24, 2007 Memorandum and in the SJC's decision, Delaney was engaged in an altercation during a delivery that Delaney was making for work. See Commonwealth v. Delaney, 442 Mass. 604, 605 (2004). In the midst of the fight, Delaney stabbed the victim with a knife. Id. at 606. He was also injured in the fight and took pictures of the injury, but did not reveal the photographs or the fact of the fight to his co-workers. Id. at 606, 616. Moreover, Delaney lied about the incident to his boss and left the knife used in the fight on an island off of Boston. Id. 606-07. At trial, Delaney claimed that he acted in self-defense. Id. at 606. The jury did not believe Delaney. Id. at 605. It convicted him of assault with intent to kill and assault

_____

Esparza, 540 U.S. 12, 18 (2003) (per curiam) ("habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner"). When reviewing a state court's harmless-error analysis on collateral review, the First Circuit sometimes bypasses this analysis and denies a petition solely on the pre-AEDPA "substantial and injurious effect" test of Brecht v. Abrahamson, 507 U.S. 619 (1993). See Evans v. Verdini, 466 F.3d 141, 146 (1st Cir. 2006). Nonetheless, this Circuit requires a petitioner to satisfy both the Brecht and AEDPA standards. See Sanna v. Dipaolo, 265 F.3d 1, 14 (1st Cir. 2001).

and battery with a dangerous weapon. Id.

During the trial, there were three comments by the prosecutor
that allegedly violated Delaney's due process right to a fair
trial: two questions regarding Delaney's failure to produce
evidence to the  police (the knife and the photograph) and one
question regarding Delaney's refusal to speak to the prosecutor (a
question that was asked twice). These comments were the subject of
Delaney's second due process claim. Delaney now concedes that his
objection regarding the evidence questions are procedurally barred
from review and that this court's conclusion to that effect is not
subject to reasonable debate. This concession clarifies a point
that was not previously apparent--that the SJC arguably treated the
refusal to speak commentary differently from the two comments on
Delaney's refusals to produce evidence.[2]

------

[2] With regard to on the prosecutors comments, the SJC wrote:

Cross-examination of the defendant. The defendant contends
that the prosecutor's cross-examination improperly
questioned him about his postarrest silence, his failure to
provide the police with the knife, and his failure to
provide the police with his own photographs of the bite mark
on his shoulder. No timely objections were made. With
respect to the defendant's postarrest silence, it was
defense counsel -- not the prosecutor -- who elicited the
defendant's testimony that he had refused to talk to the
police. The prosecutor's questions went to the issue [of]
whether the defendant had ever spoken with the prosecutor,
an inquiry that was justified by the defendant's testimony
giving the erroneous impression that they had spoken before trial.

With respect to the defendant's failure to produce two items
of physical evidence (the knife and the photographs), both
questions were improper. See Commonwealth v. Martinez, 34

As this court held, and Delaney now concedes, the SJC recognized that Delaney was procedurally barred from raising his objection to the comment on the failure to provide evidence. Jan. 24, 2007 Mem. and Order Denying Petition at 11-13. The SJC nevertheless reviewed the effect of the two comments on the evidence to ensure against a miscarriage of justice, but it is well established that the SJC's review under the miscarriage of justice

Mass. App. Ct. 131, 132-133, 608 N.E.2d 740 (1993), and cases cited. However, the one improper question about the knife (asking the defendant if he had ever shown the knife to the police) was sandwiched in amongst permissible questions about the defendant's failure to bring the knife to trial. n13 It was also improper for the prosecutor to ask the defendant whether he had shown the police the photographs he had taken of the bite mark five days after the incident. n14 However, both Henderson and the defendant testified that Henderson had bitten the defendant's shoulder during the fight in the elevator (making the point uncontested), and the defendant himself introduced one of the pictures in evidence (thereby expressing the view that the photographic evidence was helpful, not harmful, to his defense). We are satisfied that these two improper questions did not materially influence the verdicts. Commonwealth v. Alphas, supra, quoting Commonwealth v. Freeman, 352 Mass. 556, 564, 227 N.E.2d 3 (1967).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n13 The defendant had described the knife as both small and "very dull," presumably in an attempt to refute the inference of an intent to kill. His failure to produce evidence at trial that would corroborate his claim with respect to the size and condition of the knife is a proper subject of inquiry. See Commonwealth v. Ivy, 55 Mass. App. Ct. 851, 859-860, 774 N.E.2d 1100 (2002), and cases cited.

n14 The defendant replied that he had not done so because the photographs had not been developed at that time.

Delaney, 442 Mass. at 615-616.

7

standard does not constitute a waiver of a state procedural bar. See, e.g., Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004). Accordingly, this court was precluded from granting habeas relief on the basis of these two comments. Jan. 24, 2007 Mem. and Order Denying Petition at 13.

This analysis and conclusion, however, does not apply to the prosecutor's comments on Delaney's refusal to speak to the prosecutor. This court's procedural bar analysis flowed from the following portion of the SJC's opinion:

> We are satisfied that these two improper questions [regarding the knife and the photograph] did not materially influence the verdicts. Commonwealth v. Alphas, supra, quoting Commonwealth v. Freeman, 352 Mass. 556, 564, 227 N.E. 2d 3 (1967).

Delaney, 442 Mass. at 616. Alphas and Freeman provide the Commonwealth's miscarriage of justice standard, but the SJC's opinion did not clearly apply those cases, or the miscarriage of justice standard that they establish, to all three of Delaney's objections. Rather, the text clearly applies the standard only to "these two improper questions" regarding the knife and the photograph. Id.

Rather than applying clearly the miscarriage of justice standard to the third objection regarding the prosecutor's comments on Delaney's refusal to speak to the prosecutor, the SJC held that the prosecutor's "inquiry was justified by the defendant's testimony giving the erroneous impression that they had spoken before trial." Delaney, 442 Mass. at 616. In other words, the SJC

8

held that the prosecutor's questions on the subject were proper when reviewed in context. This conclusion goes to the merits of Delaney's federal claim without a clear invocation of a state procedural bar.

Under the Supreme Court's clear statement rule, the SJC's analysis of the merits arguably constitutes a waiver by the SJC of Delaney's procedural default. In Harris v. Reed, 489 U.S. 255, 263 (1989), the Supreme Court held that the plain statement rule governing the Court's direct review of state court opinions applies equally in the habeas context. "After Harris, federal courts on habeas corpus review of state prisoner claims...will presume that there is no independent and adequate state ground for state court decisions when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman v. Thompson, 501 U.S. 722, 734-35 (1991) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).

In Harris, the Court held that because the state court discussed the merits of the federal claim and failed to reference directly the state procedural rules, it had not plainly relied upon a state procedural bar to deny the petitioner's claim. Id. Similarly, in the instant case, the SJC addressed the merits of Delaney's claim without a clear reference to the Commonwealth's

procedural rules. Accordingly, this court arguably should have construed the state procedural bar as waived by the SJC.

As this court's procedural ruling was arguably in error, the court must next determine whether Delaney has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483 (2000). Delaney claims that when a reasonable jurist might find a procedural ruling debatable, a COA must issue so long as the merits of the underlying claim are not facially frivolous. This argument relies upon a misreading of the First Circuit's opinion in Evicci v. Commissioner of Corrections, 226 F.3d 26 (1st Cir. 2000). In Evicci, the Court of Appeals did not deny a motion for a COA because the petitioner's underlying constitutional claim was not "frivolous on its face[.]" 226 F.3d at 28. However, the court's conclusion does not suggest that a COA requires only a non-frivolous argument. To the contrary, the court remanded for a determination on the merits and emphasized that "[n]othing in this opinion is intended to suggest that the applicant has made out a constitutional claim so substantial that, had the claim been rejected by the district court on the merits, we would necessarily have granted a COA." Id. at 28. As explained plainly by the Supreme Court, "[a] prisoner seeking a COA must prove something more than the absence of frivolity.... [He] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller-

El, 537 U.S. at 338 (internal quotations omitted).

Although Delaney fails to identify the controlling standard, he has demonstrated that he was arguably denied a constitutional right. The prosecution may not, consistent the Fifth Amendment, comment on a defendant's post-arrest, post-Miranda silence. See Doyle v. Ohio, 426 U.S. 610, 291 (1976). Here, the prosecutor impermissibly asked Delaney about his failure to produce for the police the knife used in the crime and a photograph of evidence. See Delaney, 442 Mass. at 604. The SJC held that these questions were improper. Id.[3]

The prosecutor then asked twice: "You wouldn't have told me where the knife was if I asked you; would you?" June 29, 2005 Trial Tr. vol. 4, 145. The SJC found that these questions were not improper, reasoning that they were "justified by the defendant's testimony giving the erroneous impression that they had spoken before trial." See Delaney, 442 Mass. at 616. This court respectfully disagrees with the SJC's conclusion. When asked, "So you and I have never had conversation until today; have we?[,]" Delaney answered, "[a]bout the knife, no." See June 29, 2005 Trial Tr. vol. 4, 144-45.[4] As stated by the SJC, Delaney's qualified

---

[3] As discussed earlier, Delaney is procedurally barred from objecting to these questions. They are referenced here only for context.

[4] After the impermissibly asking Delaney why he had not produced the knife used in the attack, the prosecutor engaged in the following colloquy:

response to the prosecutor's questions might have produced the
mistaken understanding that the two had engaged in lengthy
conversations before trial. See Delaney, 442 Mass. 616. However,
the impression was cured by Delaney's explanation that he had never
conversed with the prosecutor about the knife, or anything else
detailed, "pretty much," except to say hello. Id. Moreover, it is
unclear how the subsequently repeated question, "You wouldn't have
told me where the knife was anyway; would you?" cured the
suggestion that the two had conversed before trial. Rather than
clarifying the issue, the questions may have created the
impermissible impression that Delaney should have told the

---

```
Q But you knew [the knife] was important; right?
A Yes.
Q And you pretty much knew that I'd be asking about it;
wouldn't I?
A But you never did.
Q So you and I have never had conversation until today; have
we?
A About the knife, no.
Q Or Anything.
A No. We've had conversations.
Q Besides saying "hello."
Q [sic] Beside "hello," nothing detailed, I don't think,
that I remember, except for in the courtroom.
Q I've never spoken to you outside –
A You have spoken to me but not lengthy conversation.
Q Except to say "hello"; right?
A Pretty much. Pretty much.
Q You wouldn't have told me where the knife was anyway;
would you?
A I just did.
Q You wouldn't have told me where the knife was anyway;
would you?
A I just did.
```

June 29, 2005 Trial Tr. vol. 4, 144-45.

prosecutor about the knife and that his failure to do so was evidence of his guilt. This possibility is particularly evident given the series of improper questions related to Delaney's failure to produce the knife and the photograph to the police. Thus, the questions at issue arguably penalized Delaney for invoking his right to remain silent. The SJC's contrary opinion represents an arguably unreasonable interpretation of Supreme Court precedent.

Where "[a] state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case[,]" a petition may be entitled to habeas relief. Williams v. Taylor, 529 U.S. 362, 407-08 (2000). However, for a writ of habeas corpus to issue, the petitioner must first demonstrate that the error had a prejudicial effect.

On direct review, a court confronting a preserved constitutional error must grant relief absent proof beyond a reasonable doubt that the error was harmless. See Chapman v. California, 386 U.S. 18, 24 (1967). For the purposes of this COA, however, it is assumed that relief will not issue unless the petitioner can demonstrate that the prosecutorial misconduct had a "substantial and injurious effect on the verdict" as required by Brecht v. Abramson, 507 U.S. 619, 638 (1993). The Brecht standard is more difficult for a petitioner to overcome than the ordinary harmless error analysis and is designed to recognize that direct

review is the "principal avenue for challenging a conviction," and that federal habeas proceedings provide "secondary and limited" forums. Brecht, 507 U.S. at 633.

On appeal, the First Circuit may clarify whether it intends to apply the ordinary Chapman harmless-error review or the more stringent Brecht standard in cases, such as this one, where the state court did not itself provide a harmless-error analysis. The First Circuit has explicitly reserved this issue. See Sanna v. Dipaolo, 265 F.3d 1, 14 (1st Cir. 2001). Moreover the issue has split the circuit courts. Id.; Fortini, 257 F.3d at 48 & n.6. This court assumes that the more restrictive Brecht standard applies only because the First Circuit, in Fryar v. Bissonnette, 318 F.3d 339, 342 (1st Cir. 2003), applied the Brecht standard despite the lack of a state court opinion on the matter to which the federal courts might defer. See also Fortini, 257 F.3d at 48 (assuming that Brecht applies even where the state court did not apply harmless-error analysis). This is only an assumption because the lack of discussion in Fryar leaves the First Circuit's intent unclear.

Assuming that Brecht applies, it is unlikely that prosecutorial misconduct created a "substantial and injurious effect on the verdict." This conclusion is guided by the facts of Brecht. The Brecht petitioner was charged with the first-degree murder of his brother-in-law. 507 U.S. at 624. At trial, he testified that the shooting was an accident. Id. On cross-

14

examination, the prosecution commented on the petitioner's pre-Miranda silence and offered extrinsic evidence to contradict the story. Id. at 626. Then, the prosecutor commented impermissibly on the petitioner's post-Miranda silence, harping on the fact that "the first time [the defendant] ever told this story is when [he] testified here today[.]" Id. & n.2.

The Court held that the commentary on the petitioner's post-Miranda silence was error but harmless. Id. at 628. It explained that:

> [i]t was entirely proper -- and probative -- for the State to impeach [the petitioner's] testimony by pointing out that petitioner had failed to tell anyone before the time he received his Miranda warnings at his arraignment about the shooting being an accident. Indeed, if the shooting was an accident, petitioner had every reason -- including to clear his name and preserve evidence supporting his version of the events -- to offer his account immediately following the shooting.

Id. While the State had committed constitutional error:

> [its] references to petitioner's post-Miranda silence were infrequent, comprising less than two pages of the 900-page trial transcript in this case. And in view of the State's extensive and permissible references to petitioner's pre-Miranda silence -- i. e. , his failure to mention anything about the shooting being an accident to [those he encountered] -- its references to petitioner's post-Miranda silence were, in effect, cumulative. Moreover, the State's evidence of guilt was, if not overwhelming, certainly weighty.

Id. at 639.

Here, the jury heard substantial evidence that Delaney harbored a guilty conscience. See Delaney, 442 Mass. at 613. He failed to tell his coworkers about the altercation and lied to

cover up the incident. Id. He attempted to conceal his possibly blood-stained jacket. Id. He retreated after the incident to an island in the Boston Harbor and disposed on that island the knife used in the altercation. Id. He avoided his usual haunts following the incident. Id. He also lied to his supervisor regarding his knowledge of the incident. Id. This evidence suggests that Delaney had, but did not take, the opportunity to explain his version of events. Moreover, it shows that Delaney actively sought to conceal the incident. Accordingly, the improper commentary on his post-Miranda silence was cumulative and likely harmless. This is so even if the court considers the violation in tandem with other errors, actual or alleged. As the SJC explained, the remaining evidence was simply "overwhelming." See Id. at 613-14.

Similarly, Delaney has not demonstrated "deliberate and especially egregious error" or "a pattern of prosecutorial misconduct" that "so infect[ed] the integrity of the proceeding as to warrant the grant of habeas relief[.]" Brecht 507 U.S. at 638 n.9. Assuming that each admission that Delaney complained of was intentional and inconsistent with the requirements of the Due Process Clause, the total was no more egregious than that raised in Brecht. There, the prosecutor commented directly on the petitioner's post-Miranda silence multiple times on cross examination, again on re-cross-examination, and then again during closing statement. Id. at 625 n.2. The comments here were no more

16

serious or damaging.

If not for one fact, this case would be materially identical to Brecht. In Brecht, the state introduced forensic evidence, the location of the gun, and a motive, which belied the petitioner's claim that the shooting was an accident. Brecht, 507 U.S. 625. While such extrinsic evidence was absent here, the evidence of Delaney's guilty conscience far outweighs that presented in Brecht. In Brecht, the petitioner failed to explain his story; here, Delaney actively covered up the entire incident.

In view of the foregoing, this court finds that Delaney is unlikely to demonstrate that the prosecutor's comments had a "substantial and injurious effect on the verdict." However, a reasonable jurist could find this conclusion debatable. As demonstrated by the Brecht decision itself, the most learned of jurists can dispute the harmful effect of prosecutorial misconduct. See Brecht, 507 U.S. at 635-36 ("Each [of the six courts] that has reviewed the record has disagreed with the court before it as to whether the State's Doyle error was 'harmless.'"); Id. at 643-44 (Stevens, J., concurring) (discussing the flexibility of the standard). Reasonable disagreement will often adhere to the harmless-error analysis because no matter how it is phrased, the standard requires "the discrimination...of judgment transcending confinement by formula or precise rules." Id. quoting Kotteakos v. United States, 328 U.S. 750, 761 (1946) (alterations in the

original). Further, if the First Circuit were to determine that _Chapman_, rather than _Brecht_, provides the proper standard, Delaney's argument might possibly be deemed meritorious.

III. ORDER

Accordingly, it is hereby ORDERED that Delaney's Application for a Certificate of Appealability (Docket No. 20) is ALLOWED with regard to whether the Commonwealth's comments on Delaney's post-_Miranda_ silence violated fundamental fairness, and is DENIED on all other grounds.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE